UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
HEINZ KAUHSEN, d/b/a CLASSIC
RACING CARS,
                                                                    **MEMORANDUM & ORDER**
                      Plaintiff,                                    Civil Action No. 09-4114

        -against-

AVENTURA MOTORS, INC.,

                      Defendant.
-------------------------------------------------------X

**APPEARANCES:**

**Gusy Van der Zandt LLP**
Attorneys for Plaintiff
500 Fifth Avenue, Suite 1410
New York, New York 10110
By:     Martin F. Gusy, Esq.
        Zaneta O. Butscher, Esq.

**Colin Astarita Esq.**
Attorney for Defendant
33 Main Street
Southampton, New York 11968

**HURLEY, Senior District Judge:**

Plaintiff Heinz Kauhsen d/b/a/ Classic Racing Cars ("Plaintiff") commenced this action asserting claims for breach of contract, fraud, promissory estoppel and unjust enrichment. Presently before the Court is defendant Aventura Motors, Inc.'s ("Defendant") motion for an order (1) "[d]ismissing plaintiff's Summons and Complaint as they lack proper jurisdiction, as a matter of law, pursuant to U.S. Code title 28 Section 1332(a) and Part 1 Article 2(b) of the United Nations Convention on Contracts for the International Sale of Goods"; (2) "[s]etting aside plaintiff's Default Judgment and Order pursuant to Rule 60(b) of the Federal Rules of Civil Procedure granted against the defendant . . . on December 1, 2009"; and (3) "[v]acating

plaintiff's Default Judgment and Order granted pursuant to Rule 55(b) of the Federal Rules of Civil Procedure against the defendant . . . on December 1, 2009." For the reasons set forth below, the motion is denied.

## Background

I. **Procedural History**

Plaintiff commenced this action on September 23, 2009 seeking damages in the amount of $147, 560.06 plus interest, costs, and attorney's fees based on Defendant's alleged "breach of contract for the international sale of goods and the [Defendant's] fraud to the [Plaintiff's] detriment." (Complaint at 1.) Jurisdiction is premised on diversity of citizenship; Plaintiff is a German citizen and Defendant is a New York corporation, with its principal place of business in Southampton, New York. (Complaint ¶¶ 3 &4.) As alleged in the complaint, Plaintiff's claims arise from his purchase from Defendant, on eBay, of "an alleged 1955 Porsche 356 Pre A Cabriolet, VIN # 60641" for $95,000.00 (Complaint ¶¶ 5, 12, 13.) Plaintiff alleges that Defendant promised to sell and deliver a 1955 Porsche 356 Pre A Cabriolet, VIN # 60641 that (1) was "absolutely beautiful;" (2) had "received a rotisserie restoration[1] in 1999;" (3) had

---

[1] The complaint contains the following explanation of a rotisserie restoration, which apparently is commonly used when restoring vintage automobiles:
> A rotisserie restoration consists of replacing various parts or reconditioning current ones. Typically, every nut and bolt attached to the vehicle is either restored or replaced depending on condition. The body is physically removed from the frame so every crack and crevice of the automobile can be cleaned and repaired. The vehicle is scrutinized from top to bottom including undercarriage. Suspension parts usually are painted or powder coated. Exhaust systems will be all new and either aluminized or stainless steel. All body mounts and suspension bushings will be either new rubber or polyurethane. The engine, interior and trunk are also meticulously re-engineered to original quality. When restoring the vehicle, the restorer will mount the unipanel onto a rotisserie device. The

a "Porsche Certificate of Authenticity;" and (4) was "equipped with a fully-assembled, running Porsche 356 Pre A 1500cc engine #33287 in good condition having a market value of $25,000." (Complaint ¶27.) In breach of the contract between the parties, the Porsche was in poor condition, had not received a rotisserie restoration within the last ten years, did not have a certificate of authenticity, and had a rusty 356 1600cc engine (which was not engine #33287) in poor condition with a market value of only $1700.00. (Complaint ¶ 28.)

The summons and complaint were served on Defendant on September 30, 2009 by delivering a copy to a managing agent at the address set forth in the complaint as the Defendant's principal place of business.

On November 4, 2009, Plaintiff sought and received a notation of default pursuant to Fed. R. Civ. P. 55(a). On November 11, 2009, Plaintiff moved for a default judgment, serving a copy of the motion on both Defendant and defense counsel. (Dkt. No. 6.) The Court granted the motion for a default judgment and referred the matter to Magistrate Judge Orenstein for an inquest on damages. On December 14, 2009 Judge Orenstein issued an Order setting the hearing on damages for April 13, 2010. Thereafter, the inquest was reasssigned to Magistrate Judge Boyle who issued an Order on March 8, 2010 directing, inter alia, the service and filing of a statement of the amount of damages, including attorney's fees, sought by the Plaintiff and

---

    device is much like the kitchen style rotisserie unit used for cooking but on a far larger scale. Once mounted on the rotisserie, the restorer can then rotate the body around as work is being done on each section of the vehicle. The finished product from the rotisserie restoration method is a fully reconditioned vehicle with new or like new parts. Once work is completed, the fully restored section is removed from the rotisserie and the vehicle is reassembled. The finished product is a rotisserie restored automobile.

(Complaint ¶ 7.)

directing Plaintiff to serve a copy of the Order on all parties and file proof of service thereof. In accordance with Judge Boyle's Order, Plaintiff served the Order and filed proof of service on March 8, 2010. On April 2, 2010, Defendant filed the instant motion.[2]

## II. Defendant's Motion

In support of the motion, Defendant filed an affirmation of counsel.[3] According to the affirmation, defense counsel was retained "to handle all legal actions brought for or against [Defendant] prior to the present action pending before this court," and [p]rior to the filing of this action, counsel tried on several occasions to settle all matters with plaintiff without success." (Astarita Affirm. ¶¶ 14-15.) On September 23, 2009 when the action was commenced, counsel "had been incapacitated as a result of medical misdiagnosis requiring a hernia operation and then underwent major surgery to repair a fractured hip." (*Id.* ¶15.) "The surgery required installation of rods, screws and plates to hold the fracture in place." (*Id.* ¶ 16.) Counsel "remained incapacitated for weeks before undergoing months of physical rehabilitation. It was during this time that plaintiff moved his action along to the present hearing date of April 13, 2010. Therefore, because of [counsel's] inability to defend this action due to medical reasons, and responding back through motion practice within a reasonable time of said decision, (approximately 4 months) [counsel] request[s] this court to dismiss plaintiff's cause of action due to improper jurisdiction, or set aside and vacate the present Default Judgment granted by the court to plaintiff and permit this action to be adjudicated on the merits, improper jurisdiction, or

---

[2] On April 7, 2010 Judge Boyle adjourned the inquest *sine die* pending the outcome of the instant motion.

[3] In contravention of this Court's rules, Defendant failed to serve and file a memorandum in support of the motion.

4

set aside and vacate the present Default Judgment granted by the court . . . ." (*Id.* ¶¶ 17-18.)

With respect to the assertion that this Court lacks jurisdiction, it is not the existence of diversity that Defendant challenges but rather the existence of an amount in controversy in excess of $75,000.00. According to the Defendant, Plaintiff has suffered damages at best in the amount of $54,740.06. Finally, Defendant asserts that (a) notwithstanding the complaint's allegation to the contrary, the United Nations Convention on Contracts for the International Sale of Goods is inapplicable because it does not apply to sales by auction and (b) if applicable, under the Convention, Plaintiff could have withdrawn his acceptance to the offer on the inspection date and returned the vehicle.

## Discussion

**I.     Dismissal for Lack of Jurisdiction is Denied**

Under 28 U.S.C. § 1332(a) federal jurisdiction lies where the parties are of diverse citizenship and "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." In determining defendant's challenge to the amount in controversy, the Court must apply the "legal certainty" test:

> "The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."

*Ocean Ships, Inc. v. Stiles*, 315 F.3d 111, 115 (2d Cir. 2002) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938)). The Second Circuit "'recognizes a rebuttable presumption that the face of the complaint is a good faith representation of the amount in

controversy.'" *Id.* at 116 (quoting *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.,* 166 F.3d 59, 63 (2d Cir. 1999)). "[T]o rebut this presumption, the defendant must show that the complaint was 'so patently deficient as to reflect to a legal certainty that the plaintiff could not recover the amount alleged or that the damages alleged were feigned to satisfy jurisdictional minimums.'" *Colavito v. New York Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006) (quoting *Wolde-Meskel*, 166 F.3d at 63)).

As alleged in the complaint, Plaintiff has suffered damages amounting to at least $147,560.06, which damages are comprised of (a) "$68,676.06 in restoration work and parts to restore the vehicle to be absolutely beautiful;" (b) "$34,484 in diminished value of the delivered good due to the wrong engine;" and (c) "$44,400 in lost profits due to the non-delivery of the promised engine and certificate of authenticity." (Complaint ¶ 29.)

Defendant points to the complaint's assertion that Plaintiff "sold the vehicle for EUR 70,000.00 on or about late January 2009." Proceeding from that allegation, Defendant maintains that on January 28, 2009[4] the euro was trading at $1.325 per American dollar[5] and, using that exchange rate, asserts that Plaintiff profited $92,820.00 in U.S. currency from the sale, which amount must be deducted from the alleged damages of $147,560.06, resulting in an amount in controversy of only $54,740.06.

Defendant's offset argument ignores the $95,000.00 Plaintiff paid for the vehicle.

---

[4] Defendant does not explain why, when the complaint alleges the sale was in "late" January, the appropriate date to use is January 28, 2009. The exchange rates for the euro for the period January 26 to January 30, 2009, varied from 1.299 USD to 1.326 USD. It would appear that January 28 was selected because it yielded the highest dollar amount.

[5] Defendant referred the Court to the following website as the basis for the exchange rate: http:/www.x-rates.com/cgi-bin/hlookup.cgi.

As set forth in the complaint, Plaintiff paid $95,000.00 for the car, had to put in over $68,000.00 worth of repairs in order to resell it for approximately $92,000.00 and had the car been delivered with the correct engine and certificate of warranty plaintiff could have sold it for an additional $44,000,00. In other words, the complaint supports the following calculation of damages (using round number): $95,000 (purchase price) plus $68,000 (cost of repairs) plus $44,000 (diminished value) minus $92,000 (credit for resale) equals $115,000.00 (total damages). Defendant has simply not sustained its burden of demonstrating "to a legal certainty that the claim is really for less than the jurisdictional amount." Accordingly, the Defendant's motion to dismiss for lack of jurisdiction is denied.

**II.    Defendant has not Demonstrated that Relief Under
        Either Rule 55 or Rule 60 is Warranted**

Default judgments are generally disfavored as the law prefers decisions based on the merits. *United States v. Cirami*, 563 F.2d 26, 33 (2d Cir. 1977). Nonetheless, in the interest of finality, setting aside a default judgment is appropriate in the limited circumstance provided for in Rules 55(c) and 60 (b) of the Federal Rules of Civil Procedure. *Id.* "A motion to vacate a default judgment is addressed to the sound discretion of the district court." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (internal quotations omitted).

Rule 55(c) of the Federal Rules of Civil Procedure provides that "[t]he court may set aside an entry of default for good cause, and may set aside a default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). Rule 60 (b) provides in relevant part:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect;

> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Although Defendant does not specify reliance on any particular subsection of Rule 60(b), given the assertion that "defendant has a good faith basis as to why he did not timely respond" to the complaint, it appears to be relying on Rule 60(b)(1)'s excusable neglect provision.

In setting aside a default or default judgment pursuant to Rules 55(c) and 60(b), a court should weigh three factors: "(1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the non[-]defaulting party prejudice." *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 166-67 (2d Cir.2004) (quoting *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir.1998)) (internal quotations omitted); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir.1993). Having weighed these factors, the Court concludes that the default judgment should not be disturbed.

The first factor, willfulness, encompasses conduct that "is deliberate or egregious or is carried out in bad faith." *Hernandez v. La Cazuela de Mari Restaurant, Inc.*, 538 F. Supp. 2d 528, 532 (E.D.N.Y. 2007); *see also Gucci America Inc. v. Gold Center Jewelry*, 158 F.3d 631, 635 (2d Cir. 1998) (a finding of bad faith is not a necessary predicate to finding willfulness; it is

8

sufficient that the "defendant defaulted deliberately.") Willfulness includes conduct that is "not satisfactorily explained." *McNulty*, 137 F.3d at 738.

As noted earlier, the affidavit of service states that the summons and complaint were served on a managing agent at Defendant's principal place of business. Indeed, Defendant makes no claim of improper or insufficient service. That service was made on the Defendant itself is significant because defense counsel's affidavit avers that he was incapacitated at the time the action was commenced. Seemingly then, Defendant forwarded the summons onto defense counsel and never inquired of the status in the ensuing six months. That lack of inquiry continued even after Plaintiff served a copy of its motion for default judgment on Defendant.[6] Such conduct supports the conclusion that the default was deliberate. *See New York v. Green*, 420 F.3d 99, 109 (2d Cir. 2005) (affirming finding that default was willful where defendants did not "provide any justification for their own failure to take action after receiving notice that the clerk had entered a default against them, thereby clearly signaling to defendants that their counsel had not taken requisite steps to defend their interests in the litigation.")

Also, defense counsel apparently made no arrangements for coverage during his alleged incapacity, at least none are set forth in the instant application. Moreover, defense counsel's incapacity was allegedly due to "a hernia operation" and then "major surgery to repair a fractured hip." Barring complications, and none are alleged, it would seem to this Court that

---

[6] The affidavit of service for the motion for default judgment states that the moving papers were served on November 11, 2010 by regular mail on both Defendant, at its principal place of business, and on defense counsel. (Dkt. No. 6 at p. 4.) Given that Defendant had not appeared in the action, there was no requirement that Defendant be given advance notice of the motion for default judgment. *New York v. Green*, 420 F.3d 99, 105 (2d Cir. 2005) ("Rule 55(b)(2) requires advance notice only if the party against whom a default is sought has 'appeared in the action.'") (quoting Fed. R. Civ. P. 55(b)(2).

neither surgery, the particulars of which remain illusive, would preclude defense counsel from picking up the telephone for a six month period and seeking an extension of time to answer or otherwise protecting his clients' interests. Indeed, defense counsel was not spurred into action even after Plaintiff served him in November 2009 with the motion for default judgment.

In sum, Defendant's conduct has not been satisfactorily explained and accordingly, the Court concludes that the default was willful.

The second factor also weighs in favor of denying the instant motion. In order to support a claim of a meritorious defense a movant must proffer credible evidence of facts "which directly relate[] . . . to the allegations [in the complaint] and raise[] a serious question as to the validity of those allegations." *Guangxi Nanning Baiyang Food Co., Ltd. v. Long River Intern., Inc.*, 2010 WL 1257573 (S.D.N.Y. Mar. 30 2010) (quoting *Salomon v. 1498 Realty*, 148 F.R.D. 127, 130 (S.D.N.Y. 1993)); *see Gesualdi v. Tapia Trucking, LLC*, 2009 WL 2915780 (E.D.N.Y. Sept. 11 2009) (defendant seeking to vacate default must provide evidence beyond conclusory denials to support its defense). Defendant presents no facts or information beyond conclusory assertions of counsel to support any defense.[7] Nor does Defendant cite this Court to any authority that these unsupported assertions constitute a defense to the action. For example, Defendant claims that the United Nations Convention on Contracts for the International Sale of Goods is inapplicable because it does not apply to sales by auction. No authority for what constitutes an auction under the Convention is provided and no evidence is presented of what the process was by which the car at issue was purchased. Moreover, even assuming the United

---

[7] Counsel's affirmation is based "upon the inspection of the record of this matter and upon conversation with the defendant and counsel's own investigation." (Dkt. No. 14, at p. 2 ¶ 2.)

10

Nations Convention is inapplicable, no explanation is given of the import of such inapplicability. Similarly, Defendant refers to the fact that "it is entirely possible that the damage may have occurred" while the car was shipped "over the rough Atlantic Ocean" but does not address who bore the risk of such damage during transport. It is counsel's duty in the first instance to provide legal authority for a proposition. To make bald legal assertions and expect the Court to ferret out the applicable law without any input from counsel is inexcusable.

The last factor to be considered is prejudice. "[D]elay alone is not a sufficient basis for establishing prejudice . . . Something more is needed. For example, delay may thwart plaintiff's recovery or remedy. It may also result in the loss of evidence, create increased difficulty of discovery, or provide greater opportunity for fraud and collusion." *Green*, 420 F.3d at 110 (internal quotations and citations omitted). The assertion of prejudice by Plaintiff, to wit "wast[ing] the time and expenses [Plaintiff] has incurred toward reaching finality in this case" is not particularly compelling. Nevertheless, "where, as here, two of the factors weigh against granting the motion to vacate a default judgment, the Court may deny the motion on those grounds alone." *Gesualdi*, 2009 WL 2915780, * 3.

**Conclusion**

The motion to vacate the default judgment is denied.

Dated: Central Islip, New York
    June 7, 2010

/s/
Denis R. Hurley
Senior District Judge