UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

HEINZ KAUHSEN, d/b/a Classic Racing Cars,

            Plaintiff,

   -against-

AVENTURA MOTORS, Inc.,

            Defendant.
-------------------------------------------------------X

**MEMORANDUM & ORDER**
**09 CV 4114 (DRH)**

**APPEARANCES:**

**Gusy Van der Zandt LLP**
Attorneys for Plaintiff
500 Fifth Avenue, Suite 1410
New York, New York 10110
By:   Martin F. Gusy
        Mattew J. Weldon

**Hogan & Cassell LLP**
Attorneys for Defendant
500 North Broadway, Suite 153
Jericho, New York 11753
By:   Michael D. Cassell
        Shaun K. Hogan

**HURLEY, Senior District Judge:**

      Plaintiff brings this diversity action arising from the 2008 purchase of a 1955 Porsche Cabriolet from defendant, Aventura Motors, Inc. Presently before the Court is plaintiff's motion for attorney's fees. For the reasons that follow, plaintiff's application is denied.

1

I.  **BACKGROUND**

In December of 2009, after defendant failed to respond timely to the complaint, the Court entered a default judgment in plaintiff's favor and referred the matter to Magistrate Judge Michael Orenstein for an inquest on damages.  (*See* Orders dated 12/01/09.)  After a number of adjournments, Judge Orenstein held two consecutive days of hearing on damages on September 22 and 21, 2010.  On the second day of hearing, the parties came to a mutual resolution of the matter, and dictated the terms of a settlement on the record. (*See* Minute Entry dated 9/22/10.)  Therein, defendant agreed to pay plaintiff $40,000 in full satisfaction of plaintiff's claim within 90 days, *viz.* by December 21, 2010. (Affidavit of Martin F. Gusy ("Gusy Aff.") ¶ 11.) The Clerk of Court then administratively closed the case on September 22, 2010 in light of the parties' settlement agreement.[1]

On December 20, 2010, on the eve of the deadline for payment, defendant's counsel contacted plaintiff's counsel to inform him that defendant would only be able to pay $10,000 by the due date, and that the remaining $30,000 payment would have to be tendered over the course of the following three months. (Gusy Aff. Ex. C.)  After not receiving payment on either sum, plaintiff's counsel followed up by email dated January 5, 2011, stating that he had been "instructed to impose a last and final payment deadline" of January 7, 2011 for the entire $40,000. (Gusy Aff. Ex. D.)  Defendant's counsel promptly responded the same day, stating that his clients "simply do not have the money," but that they would make a $10,000 payment immediately, if the parties could come to an agreement regarding payment of the balance over the next three months. (*Id.*)

---

[1] Although the 9/22/10 docket entry in which the Clerk of Court "terminated" the case is not visible to the parties, the 9/22/10 termination date is nonetheless reflected at the top of the docket sheet.

Later that day, on January 5, 2011, defendant's counsel emailed plaintiff's counsel to confirm that he had received $10,000 in his IOLA account, and that he would wire the money "as soon as [they] have a settlement agreement that provides for the balance to be paid in installments of [$10,000] over the next three months." (Gusy Aff. Ex. E.) Plaintiff's counsel immediately responded that the prior deadline for full payment of the settlement proceeds had passed on December 21, 2010. (Gusy Aff. Exs. D, F.) No mention of the proposed installment agreement was made.

On January 7, 2011, plaintiff filed a request for a premotion conference in anticipation of a motion for either default judgment, summary judgment, and/or for an order compelling payment of the settlement proceeds. (*See* Letter dated 1/07/11, docket no. 31.) Defendant responded, arguing *inter alia*, that the Court did not have jurisdiction to entertain a motion to enforce the agreement because the Court never retained jurisdiction over the matter. (*See* Letter dated 1/13/11, docket no. 32.)

Shortly thereafter, on February 3, 2011, the parties signed a new agreement (hereinafter "Agreement" or "Contract"), which contemplated the immediate payment of $10,000 and payment of the $30,000 balance by February 28, 2011. (Agreement § 1.) After a number of inquiries by plaintiff's counsel, defendant finally made the initial $10,000 payment on March 11, 2011, but informed plaintiff that the balance could not be paid until April 25, 2011, "[d]ue to severe and unforeseen financial issues." (Gusy Aff. Ex. L.)

Having still not received payment on the balance, plaintiff filed a request with the Court on March 29, 2011 for an Order to Show Cause why a prejudgment order of attachment should not be entered against defendant for $30,000. (Motion for Order to

Show Cause, docket nos. 38-40.) The Court issued the order to show cause on March 30, 2011, scheduling a hearing on the matter for April 8, 2011. However, before the date for a hearing, defendant tendered payment of the $30,000 balance, and plaintiff withdrew his motion. (Motion to Withdraw, docket no. 43.) Plaintiff then filed the instant motion seeking $33,594.83 in attorney's fees and $690.20 in costs pursuant to section eight of the parties' February 3, 2011 settlement agreement. That provision states: "In the event of any litigation concerning this agreement, the prevailing party shall be entitled to recover costs and reasonable attorney's fees through all appeals." (Agreement § 8.)

## II. SUBJECT MATTER JURISDICTION

Before the Court may address the merits of plaintiff's application, it must first evaluate defendant's contention that the Court lacks subject matter jurisdiction to hear this motion. Relying primarily on the Supreme Court case, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994), defendant argues that because the Court did not explicitly retain jurisdiction to hear the matter, it is without the authority to rule on a dispute arising out of the agreement. Indeed, under *Kokkonen*, "in the absence of such an independent basis for jurisdiction, a federal court has jurisdiction to enforce a settlement agreement only if the dismissal order specifically reserves such authority or the order incorporates the terms of the settlement." *Joseph v. Scelsa*, 76 F.3d 37 (1996)(citing *Kokkonen*, 511 U.S. at 381-82).

The *Kokkonen* case, however, presented in a different procedural posture than the instant action. There, the parties filed a signed, written stipulation of dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(ii), which the district court so ordered. *Kokkonen*, 511 U.S. at

376-77. In so ordering the stipulation, however, the court did not retain jurisdiction to enforce the underlying agreement, which the Supreme Court later held on appeal stripped it of the power to oversee the settlement dispute. Here, after the Court had granted plaintiff's motion for default judgment against defendant and referred the matter for an inquest on damages, the parties entered a settlement agreement on the record before the magistrate judge. Thereafter, the Clerk of Court administratively closed the case. At no point, however, did this Court ever "so order" the stipulation that was read into the record before Judge Orenstein. Subsequently, the parties entered into a second Agreement on February 3, 2011 that superseded[2] the prior agreement. The second Agreement was also never so ordered by the Court, nor was a request for the Court to do so ever made by the parties.

      The parties offer differing views as to whether the case was actually dismissed. Defendant contends, of course, that it was, and plaintiff that it was not. Determining this question directly affects whether the *Kokkonen* jurisdictional rule applies. *See, e.g., Brents v. Esprit De Corps Res. Group*, 2004 U.S. Dist. LEXIS 19633 at *4 n.1 (D. Conn. Sept. 27, 2004)("The present action has not been dismissed and so *Kokkonen* does not apply.") The Court may exercise jurisdiction over a settlement dispute if—as is typically done in a dismissal order—it directs the parties to comply with the settlement agreement, or other otherwise retains jurisdiction within the language of the order. *Kokkoken*, 511 U.S. at 381-82. Otherwise, the Court may exercise ancillary jurisdiction where enforcement of the subject agreement would "permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent," or "enable a

---

[2] The Agreement contains a merger clause stating that the Contract "constitutes the entire agreement and understanding between the parties concerning the subject matter hereof." (Agreement § 5.)

court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Id*. at 379-80 (internal citations omitted).

Although, the Clerk of Court administratively closed, or "terminated," the case following the parties' on-the-record stipulation of settlement, the case was never actually dismissed. Under Rule 41(a), Fed. R. Civ. P., a case may be voluntarily dismissed without order of a court where (i) the plaintiff provides a notice of dismissal prior to the service of an answer or motion for summary judgment by the opposing party, or (ii) where there is a stipulation of dismissal "signed by all parties." (*Id.*) As no answer or motion for summary judgment was filed in this case, the first situation applies. Plaintiff did not file a notice of dismissal here, and the Court declines to construe the stipulation read into the record by the parties as such notice. Although a stipulation is not necessarily required in this instance, the email correspondence between counsel makes clear that the parties contemplated dismissal of this case through the filing of a stipulation of discontinuance. (*See* Email of Defendant's Counsel dated 12/8/10, Gusy Aff. Ex. B.) Furthermore, the fact that defendant's counsel himself insisted on the execution of a stipulation of discontinuance long after the first agreement had been read in to the record undermines his assertion that this case had in fact previously been dismissed.

Having determined that the case has not been dismissed, the exercise of jurisdiction is, in effect, at the discretion of the Court. In other words, as with the typical case, the Court may choose to reserve jurisdiction over enforcement of a settlement agreement prior to and upon dismissal of the case. This case having not been dismissed, the Court sees fit to enforce an Agreement that has a direct corollary to a stipulation entered on the record in a proceeding in this same case. Such an exercise is in line with

its authority "to manage its proceedings, vindicate its authority, and effectuate its decrees," *Kokkonen*, 511 U.S. at 379-80, just as it would be upon the occasion of a typical order of dismissal.

      The Court further notes that exercising jurisdiction over this dispute is in accord with the parties' intent. The Agreement specifically provides that "[s]hould any dispute arise under this Agreement, the parties . . . agree that any lawsuit, claim, dispute, or action arising out of or concerning this agreement shall exclusively be adjudication in [the United States District Court for the Eastern District of New York]." (Agreement § 7 (referencing the definition of "Court" as it set forth in section 1).)

### III.   THE AGREEMENT

#### a. *The Attorney's Fee Provision is Binding*

      Defendant next contends that the attorney's fee provision of the Agreement should not be binding on the parties because there was never a meeting of the minds on that particular issue. (D's Opp. at 18-19. Defendant's counsel states in his affirmation that he "understood that pursuant to the settlement terms each side would be responsible for its own costs and attorney's fees." (Affirmation of Shaun Hogan ("Hogan Aff.") ¶ 31.) Dean Silvera, one of the two owners of Aventura Motors, and the individual who signed the Agreement on behalf of defendant, similarly stated in his affidavit that he too understood that each side would bear their own attorney's fees and costs. (Affidavit of Dean Silvera ¶ 22.)

      The Court is troubled by these sworn assertions. The relevant portion of the Agreement could hardly be more clear: "In the event of any litigation concerning this

7

Agreement, the prevailing party shall be entitled to recover costs and reasonable attorney's fees . . . ." (Agreement § 8.)  How one could read that provision and not understand that the Agreement contemplated the imposition of attorney's fees is beyond the comprehension of the Court.  Moreover, an email correspondence between counsel on January 24 and 25, 2011 reveals that defendant's counsel reviewed a draft version of the Agreement and submitted to plaintiff's counsel a list of all changes that would need to be made to the document before it could be signed.  (Gusy Aff. Ex. G.)  Each request was honored in the final draft, but none of these proposed revisions from defendant's counsel made any mention of the attorney's fee provision.   Further, despite Silvera's purported lack of understanding of the issue, he nevertheless signed the Agreement.

More to the point, section five of the Agreement contains a merger clause.  Therefore, absent a showing that the fees provision is ambiguous—and the Court sees no good-faith basis for such an argument in the present case—the Court is precluded from considering extrinsic evidence as to plaintiff's own understanding of what can fairly be described as the "clear terms" of the contract.  Defendant's argument that the subject provision should not be enforced is therefore without merit.

                b. *Plaintiff is not a "Prevailing Party" within the Meaning of the Agreement*

The Agreement's attorney's fee provision conditions any award on a showing that the party seeking fees prevailed in "litigation concerning this Agreement." (Agreement § 8.)  In an effort to define what it means to "prevail" therein, plaintiff quotes a sizable excerpt from a case that analyzes that term as it pertains to fee-shifting statues.  (Pl's. Br. at 9-10 (citing *B.W. v. New York City Dept. of Education*, 716 F.Supp. 2d 336 (S.D.N.Y.

2010)). This cited case, and the numerous internal citations included in the excerpt, analyze what it means to be a "prevailing party" in the context of the fee-shifting rules of the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq.* and the Civil Rights Act, 42 U.S.C. § 1988. This cited decisional law is therefore only marginally instructive for present purposes because plaintiff's application for attorney fees here is not made pursuant to statute, but rather to a contract between the parties. "[C]ontractual provisions for the payment of attorneys' fees [are] strictly construed, and general language will not be sufficient to warrant an award for a type of expense that is not customarily reimbursed." *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1263 (2d Cir. 1987); *see also Bank of New York v. Amoco Oil Co.*, 35 F.3d 643, 661 (2d Cir. 1994) ("Under the law of New York, a settlement agreement in writing between parties represented by counsel is binding and, essentially, a contract . . . subject to the rules governing the construction of contracts.") (internal quotes and citations omitted).

The subject provision here allows for the award of fees for "any litigation concerning this Agreement." (Agreement § 8.) The plainest reading of this language would preclude granting fees for legal work that is merely related to the underlying action generally and not arising from the Agreement itself. Plaintiff's application seeks nearly $34,000 in fees for work dating as far back as January of 2009. (Gusy Aff. Ex. T.) Strict construction of the phrase "litigation *concerning* this Agreement" simply does not allow for the remuneration of work conducted prior to the Agreement's existence. The Court will therefore focus its analysis on whether plaintiff "prevailed" in any litigation activity occurring *after* the Agreement was executed on February 3, 2011.

9

In that regard, plaintiff presented only two applications to Court after that date (excluding the present application for fees): (1) supplemental support for a prior request for a premotion conference regarding default judgment, summary judgment, and/or an order to compel, and (2) a motion for an Order to Show Cause why a prejudgment order of attachment should not be issued against defendant. (*See* Letter dated 3/1/11, docket no. 34; Motion for Order to Show Cause, docket no. 38.) The Court issued the proposed Order to Show Cause and scheduled a hearing for the following week. However, before the date of the hearing, defendant tendered the $30,000 balance and plaintiff withdrew both applications mentioned above. (*See* Motions for Withdrawal dated 4/6/11, docket nos. 43, 44.) These matters were therefore never heard by the Court and plaintiff plainly did not "prevail" thereon.

Plaintiff nevertheless argues that he did in fact "prevail" under the Order to Show Cause because "[a]chieving the Order to Show Cause had the effect of altering the relationship of the parties, compelling Defendant to bring itself into compliance with the February 3rd Settlement Agreement and the default judgment." (Pl.'s Mot. at 11.) First, while plaintiff may have succeeded in having his motion for the issuance of the Order to Show Cause granted, this has no material legal significance other than to establish hearing and return dates for defendant's response. Second, plaintiff's argument that the Order to Show Cause "altered the relationship of the parties" is no doubt borrowed from the case law cited by plaintiff regarding the definition of a "prevailing party" under fee-shifting statutes noted above. (Pl.'s Br. at 11.) However, while this case law establishes that an "alteration in the parties' relationship" is a factor for courts to consider—and to the extent this factor is even relevant to a fees application governed by contract— such an

10

alteration "must have occurred because of a disposition that is judicially sanctioned." *B.W.*, 716 F.Supp. 2d at 344 (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001)). Although the Order to Show Cause may have helped prod defendant into paying the balance owed, the Court never ruled on the underlying application for an Order of Attachment. Therefore, any effect that the Order to Show Cause may have had on defendant's decision to satisfy the outstanding debt, it was not the result of any judicially sanctioned disposition of this Court.

As plaintiff has failed to demonstrate that he was a "prevailing party" in "litigation concerning [the] Agreement," his application for attorney's fees must be denied.

### IV.  SANCTIONS FOR PURPORTED BAD-FAITH CONDUCT

In the alternative, plaintiff seeks an award of attorney's fees for what it terms as defendant's bad faith conduct during the litigation of this case. (Pl.'s Br. at 11-13.)

Notwithstanding the "American rule" against awarding attorney's fees, the Supreme Court has recognized the occasion for granting such fees where, *inter alia*, a "party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Herman v. Davis Acoustical Corp.*, 196 F.3d 354, 357 (2d Cir. 1999)(quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975))(internal quotation marks omitted). "These exceptions are unquestionably assertions of inherent power in the courts to allow attorneys' fees in particular situations." *Id.*; *see also Hall v. Cole*, 412 U.S. 1, 4-5 (1973)("Although the traditional American rule ordinarily disfavors the allowance of attorneys' fees in the absence of statutory or contractual authorization,

federal courts, in the exercise of their equitable powers, may award attorneys' fees when the interests of justice so require.")(internal citations and footnotes omitted).

Issuing such an award requires "clear evidence that the challenged actions are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes." *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir. 2000)(*quoting Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986)); *see also, Eisemann v. Greene*, 204 F.3d 393, 397 (2d Cir. 2000) (distinguishing between motions filed in "bad faith" and those lacking merit). Although "the decision to impose sanctions is uniquely within the province of a district court," it must be "made with restraint and discretion." *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999)(citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991)).

Plaintiff argues that he is entitled to attorney's fees under this exception to the American Rule because: (1) defendant "promised to pay $40,000 within 90 days" but failed to do so; (2) defendant's counsel "sat" on the $10,000 in his escrow account for a matter of weeks before transferring payment; (3) defendant's counsel "continually argued that the Court had no jurisdiction over the Defendant, further delaying payment"; and (4) defendant's counsel claimed "in multiple letters to the Court" that the Agreement was not enforceable because, although the client did sign the document, he himself did not. (Pl.'s Br. at 13.)

As to the first issue raised by plaintiff, the fact that defendant "promised" to make payment does not necessarily imply that he made that representation in bad faith. It may very well have been that defendant believed at that time that payment within 90 days was entirely possible. Certainly, plaintiff has offered nothing in the way of "clear evidence"

12

to suggest otherwise. In fact, the December 20, 2010 email from defendant's counsel states that the 90-day schedule needed to be revised due to the "*unforeseen* financial constraints" of his client. (Gusy Aff. Ex. C (emphasis added).) Regarding the withholding of the $10,000 payment, while it does appear from the counsel's email correspondence that defendant's counsel may have held onto the money for an unwarranted amount of time, plaintiff fails to demonstrate what effect this had on the amount of legal fees created as a result. Certainly, all of legal work conducted during the early months of 2011 would have occurred anyway, as $30,000 still remained unpaid at that time.

Next, although defendant did not ultimately prevail on the jurisdictional question, the Court does not find its arguments to be entirely without color. As discussed in more detail *supra*, defendant had a reasonable basis to believe that the case may have been dismissed, given that the parties had settled the matter on the record, and the Clerk of Court had designated the case as "terminated" as of September 22, 2010. Finally, defendant's argument that the Agreement should be disregarded because it lacked counsel's signature rests on the most shaky legal ground of all of defendant's assertions. Nevertheless, to conclude that it lacked any colorable basis whatsoever is perhaps a bridge too far. Notably, the final draft of the Agreement sent from plaintiff's counsel was signed by both plaintiff and his attorney, and included slots for both defendant and counsel to countersign.

For these reasons, plaintiff has failed to demonstrate that defendant acted with the requisite bad faith to prevail herein.

**V.  CONCLUSION**

Accordingly, plaintiff's application for the award of attorney's fees is denied in its entirety.  As all of the outstanding matters in this case appear to be resolved, the parties shall file a stipulation of discontinuance forthwith.


SO ORDERED.


Dated: Central Islip, New York
       July 9, 2012                                            /s/
                                                    Denis R. Hurley
                                                    United States District Judge

14